IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MELVIN KERNS,** *et al.*, | ) |
| | ) |
|     **Plaintiffs,** | ) |
| | ) |
| v. | )   **CIVIL ACTION 06-0431-WS-B** |
| | ) |
| **PRO-FOAM OF SOUTH** | ) |
| **ALABAMA, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER**

This action comes before the Court on Defendant's Motion in Limine to Restrict Plaintiffs to their Deposition Testimony Concerning the Alleged Pre-Fire and Alleged Post-Fire Value of the Subject Property (doc. 77) and Defendant's Motion in Limine to Prevent Plaintiffs from Calling Defense Expert Larry Creel to Testify (doc. 78).  Both Motions have been briefed and are ripe for disposition at this time.

**I.    Relevant Background.**

This action arises from a fire on November 8, 2005 that caused substantial damage to a partially constructed house in Gulf Shores, Alabama, belonging to plaintiffs, Melvin and Pauline Kerns.  Plaintiffs maintain that defendant, Pro-Foam of South Alabama, Inc., caused the fire through the negligent or wanton acts of its agents/owners in applying spray-on polyurethane foam insulation to that house.  This action is set for jury trial on August 8, 2007.

The home was approximately 50% complete at the time of the fire; however, the fire caused extensive damage.  Demolition and removal of damaged areas of the structure began shortly before Christmas 2005, and plaintiffs' evidence is that it took six months to restore the house to its condition preceding the fire.  In that regard, plaintiffs claim as damages in this action "out-of-pocket expenses incurred to remove the fire-damaged construction components and replace the framing, roof decking, roof shingles, rough-in electrical wiring, rough-in plumbing and drywall." (Joint Pretrial Document (doc. 71), at 23.)  According to plaintiffs, these expenses

total $188,899.  To those amounts, plaintiffs would add $2,720 in claimed damages for materials price increases, furniture storage and materials replacement.  (*Id.*)  No other damages are sought.  (*Id.*)  Plaintiffs have offered no expert testimony as to the fair market value of the partially constructed home prior to the fire, nor have they furnished any direct evidence of the diminution in such value caused by the fire.

Both sides offered expert testimony concerning the causes of the fire.  Defendant's expert, Larry Creel, opined that Pro-Foam applied the foam insulation to plaintiffs' house in accordance with industry standards, that such application did not cause the fire, that Pro-Foam's attempts to locate a hot spot when the attic became smoky were consistent with industry standards, that the application of foam can be ruled out as a cause of the fire, and that the fire was caused by manufacturing defects in the particular batch of foam.  In an Order (doc. 62) dated July 6, 2007, the Court ruled on plaintiffs' *Daubert* motion pertaining to Creel by excluding his opinions that the foam applied to plaintiffs' residence had a manufacturing defect with respect to core temperature, such opinions being unreliable and unhelpful to the trier of fact; however, the July 6 Order in no way forbade or limited Creel from testifying as to other opinions identified in his expert report or deposition.  By contrast, plaintiffs' proposed expert, Gordon Damant, offered opinions that the fire was caused by spontaneous combustion of polyurethane foam insulation resulting from improper application by Pro-Foam.  However, the July 6 Order found that Damant's opinions failed a Rule 702 analysis because he was not qualified to give them and because his methodology of ruling out alternative causes based on assumed facts contrary to those in the record would not be of assistance to the jury.  Following this exclusion of their primary expert on *Daubert* grounds, plaintiffs designated Creel (defendant's expert) as a witness whom they intend to call at trial in their case-in-chief.  (Joint Pretrial Document (doc. 71), at 20-21.)

Both of these issues (*i.e.*, plaintiffs' reliance on out-of-pocket expenses for repairing the house to prove damages, and plaintiffs' intent to call defendant's expert as a witness for plaintiffs) are the subject of defendant's present Motions in Limine.

**II.    Motion in Limine Concerning Measure of Damages.**

Defendant's first Motion seeks to restrict plaintiffs from presenting evidence concerning repair or replacement costs incurred after the fire, on the grounds that the proper measure of

-2-

damages is the difference in fair market value of the property before and after the fire.[1]  Plaintiffs counter that those out-of-pocket repair costs are properly submitted to the jury as evidence of the diminution in value of the property occasioned by defendant's allegedly negligent and wanton conduct in causing the fire.

Alabama law concerning the measure of damages in a case such as this is quite clear.  As the Alabama Supreme Court has written, "The proper measure of damages, in a tort action, for the destruction of a building or buildings is the difference between the fair market value of the property immediately before and after the destruction or damage."  *Dooley v. Ard Oil Company*, 444 So.2d 847, 848 (Ala. 1983); *see also IMAC Energy, Inc. v. Tittle*, 590 So.2d 163, 168 (Ala. 1991) ("The proper measure of compensatory damages in a tort action based on damage to real property is the difference between the fair market value of the property immediately before the damage and the fair market value immediately after the damage."); *S.S. Steele & Co. v. Pugh*, 473 So.2d 978, 982 (Ala. 1985) ("In general, the proper measure of damages for injury to property is the difference in market value before and after the injury."); *Illinois Cent. R. Co. v. Elliott*, 82 So. 582 (Ala.App. 1919) (where defendant allegedly caused plaintiff's storehouse to fall down, the measure of damages is the difference between the value of the property immediately prior to, and immediately subsequent to, the injury).[2]  As one Alabama

---

[1] Defendant first attempted to litigate the admissibility of plaintiffs' repair costs evidence and the proper measure of damages in its reply brief in support of its motion for summary judgment.  In an Order (doc. 73) entered on July 16, 2007, the undersigned declined to consider that argument because a reply brief is not an appropriate vehicle for presenting new arguments or legal theories, defendant could have raised this objection earlier, and plaintiffs would be prejudiced because they had not had an opportunity to be heard in response.  (*See* July 16 Order, at 19 n.22.)  Contrary to plaintiffs' suggestion in briefing the Motion in Limine, the Court did not definitely resolve those issues on summary judgment, but rather found that they had not been timely raised for resolution via Rule 56 motion.  As currently postured, however, Pro-Foam has remedied this procedural defect and the Kernses have been afforded a fair opportunity to be heard; therefore, it is appropriate to take under submission the challenge to plaintiffs' evidence of out-of-pocket repair costs and the proper measure of damages at this time.

[2] This notion is further reinforced in the *Alabama Pattern Jury Instructions - Civil* (2nd ed.), § 11.26 of which reads as follows: "The measure of damage for (injury)(damage) to real property is the difference in the reasonable market value of the land immediately before its (injury)(damage) and the reasonable market value immediately after the (injury)(damage)."  *Id.*

commentator has observed, "'Market value' is defined as the price at which a willing seller would sell and a willing buyer would buy, neither being compelled to sell or to buy.  This measure is left largely to the discretion of the jury."  J. Marsh and C. Gamble, *Alabama Law of Damages* (5th ed. 2004), at § 33:1; *see also Crump v. Geer Bros., Inc.*, 336 So.2d 1091, 1096-97 (Ala. 1976) (similar).  These black-letter principles are not controversial and cannot reasonably be disputed by either party.

The critical issue for purposes of the Motion in Limine is whether a jury can consider out-of-pocket repair costs as evidence of that difference in fair market value.  Numerous Alabama authorities have answered this question affirmatively.  *See IMAC Energy*, 590 So.2d at 168 (affirming damages award in property damage case as being based on sufficient evidence where plaintiffs made no direct showing of difference in fair market value before and after defendant's blasting conduct, but did submit evidence of amount paid for property and repair estimate for same); *Southern Ry. Co. v. Slade*, 68 So. 867, 870 (Ala. 1915) ("While the reasonable cost of the burned building, or of similar new buildings, is not the criterion of value, yet evidence thereof is relevant in support of opinion evidence as to actual value ...."); *Alabama G.S.R. Co. v. Johnston*, 29 So. 771, 775 (Ala. 1901) ("Though the cost of building new houses of the kind burned was not the criterion by which to measure the damage caused by their destruction, evidence of such cost was relevant, as tending to throw light on their value ...."); *see generally Arrick v. Fanning*, 47 So.2d 708, 712 (Ala.App. 1950) (in case involving damage to personal property, "evidence of the amount required to make necessary repairs is an evidential factor which the jury is authorized to consider in arriving at the true measure of damages"); *Alabama Pattern Jury Instructions - Civil* (2nd ed.), § 11.24 (similar).

Anticipating plaintiffs' assertion that evidence of repair costs is admissible to show the difference in fair market value before and after the fire, defendant insists that the Alabama Supreme Court's recent decision in *Poffenbarger v. Merit Energy Co.*, --- So.2d ----, 2007 WL 1378333 (Ala. May 11, 2007), "forecloses that option for them."  (Motion, at 4.)  *Poffenbarger* does nothing of the sort.  In that case, the Alabama Supreme Court held "that the appropriate measure of direct, compensatory damages to real property generally is the diminution in the value of that property, even when the cost to remediate the property exceeds the diminution in the value thereof."  *Poffenbarger*, 2007 WL 1378333, at *9.  Although the last clause of that

holding was a matter of first impression in Alabama, *Poffenbarger*'s statement of the measure of damages to real property was nothing new. More importantly, nothing in that decision purported to abrogate, overrule or criticize the well-established notion that repair costs are admissible as evidence of the diminution in value to real property. In fact, *Poffenbarger* cited with approval a nineteenth-century treatise for the proposition that "[s]trictly speaking ..., the cost of repairs is not the measure of damages, ***but only evidence of the amount of damages***." 2007 WL 1378333, at *4 (citation omitted) (emphasis added). Nowhere in *Poffenbarger* did the Alabama Supreme Court purport to be rolling back this well-settled principle. Thus, in the wake of *Poffenbarger*, evidence of repair costs remains admissible to show diminution in value for injury to real estate, but diminution in value remains the measure of damages even when remediation costs exceed that diminution in value. Nothing in this holding would forbid plaintiffs from submitting to the jury proof of their repair costs as evidence of the total diminution in value to their property. As such, defendant's construction of *Poffenbarger* as mandating exclusion of those repair costs at trial cannot prevail.

In its Motion in Limine, defendant also objects that it would be improper for plaintiffs to use repair costs as evidence of diminution in fair market value, inasmuch as "the plaintiffs have made no effort to obtain qualified expert testimony establishing any alleged diminution in value, and cannot offer it themselves." (Motion (doc. 77), at 7.) This argument runs counter to well-settled Alabama law. There is no requirement under Alabama law that a plaintiff proffer expert testimony to establish the fair market value of his or her real property. *See, e.g., Baldwin v. McClendon*, 288 So.2d 761, 768 (Ala. 1974) (witness who undertakes to opine about value of a piece of land need not be an expert if he "has given special attention to land values and has had an uncommon occasion to know them"). Indeed, "[t]he general rule is that an owner of real estate is competent to testify as to its value." *Alabama Power Co. v. Cummings*, 466 So.2d 99, 102-03 (Ala. 1985); *see also S.S. Steele*, 473 So.2d at 983 (plaintiff testified at trial that value of property had fallen because crack in slab had grown worse between date he moved in and date of trial); *Ryals v. Hunter*, 638 So.2d 2 (Ala.Civ.App. 1994) (property owner "is entitled to give her opinion as to the value of the property before and after the trespass to establish the legal measure of damages"); *Wilkens v. Kaufman*, 615 So.2d 613, 615 (Ala.Civ.App. 1992) ("A person may testify to the value of his or her land, even if that person is not an expert.").

Finally, defendant argues that plaintiffs' deposition testimony requires that they be barred from submitting evidence of repair costs to the jury to show diminution in value. In this regard, defendants rely on the following exchange in plaintiff Pauline Kerns' deposition:

> "Q:   Do you have an opinion of the value of your home immediately before the fire?
> "A:   It was half finished. So it didn't have much value.
> "Q:   All right. Do you have an opinion of the value of your home immediately after the fire?
> "A:   No."

(P. Kerns Dep., at 183.)[3] Based on this excerpt, Pro-Foam contends that plaintiffs "cannot use the alleged repair costs to try to infer that the value of the property was greater than [Mrs. Kerns] said it was." (Motion, at 7.) In making this kind of estoppel argument, defendant would ascribe far more weight to Mrs. Kerns' vague statement than it can bear. Far from making a definitive statement that the value of plaintiffs' property was a certain amount before the fire, Mrs. Kerns simply made the amorphous, indefinite observation that, because it was half-finished, the home "didn't have much value." What does the phrase "didn't have much value" mean? Not much value relative to what? The value of the finished home? The cost of the labor and materials that had been spent to date on the project? The cost of repairing the home after the fire? The cost of the land? Defense counsel elected not to probe further in this area at Mrs. Kerns' deposition, and evidently opted not to ask Mr. Kerns any questions on the topic. On this fragmentary record, the Court finds no fundamental inconsistency between Mrs. Kerns' unexplained, unelaborated-on statement in her deposition and plaintiffs' desire to utilize repair costs as evidence of the diminution in value to the property after the fire. Simply put, Mrs. Kerns is entitled to explain her answer. Defendant cannot use its subjective, speculative interpretation of that answer to exclude plaintiffs' damages evidence at trial on an estoppel theory, when there are other reasonably plausible interpretations of the excerpted testimony that defendant did not explore, much less seal off, in questioning Mrs. Kerns during her deposition.

For all of the foregoing reasons, defendant's Motion in Limine (doc. 77) concerning

---

[3] Defense counsel apparently did not pose similar questions to plaintiff Melvin Kerns during his deposition; therefore, it is unclear whether Mr. Kerns has any opinions as to the value of the house before and after the fire and, if so, what those opinions might be.

plaintiffs' evidence of damages is **denied**.[4]  Should they prevail on liability, plaintiffs will be limited in the damages they can recover to the difference in fair market value of the house before and after the fire (the proper measure of damages under Alabama law in a tort case predicated on injury to improvements on land); however, plaintiffs' out-of-pocket repair costs may properly be submitted to the jury as evidence of that diminution in value, subject to a *Poffenbarger* instruction that repair costs are not recoverable to the extent they exceed the diminution in value to the house.[5]

### III.     Motion in Limine Concerning Plaintiffs' Intent to Call Defendant's Expert.

Defendant's other Motion in Limine relates to plaintiffs' stated intent to call defense expert Larry Creel as a witness during their case-in-chief.[6]  Pro-Foam, which has listed Creel as

---

[4] In so ruling, the Court does not embrace or adopt plaintiffs' attempt to liken this case to *Tuscaloosa County v. Jim Thomas Forestry Consultants, Inc.*, 613 So.2d 322 (Ala. 1992), a case involving damage to a Tuscaloosa County bridge that collapsed when the defendant's truck (which weighed four times the posted weight limit to the bridge) attempted to traverse it. The Alabama Supreme Court determined that a fair-market value formula for measuring damages in that case was inapplicable because a bridge is an unmarketable structure. *Id.* at 326. Plaintiffs would apparently contend that a house that is 50% completed is not marketable; however, the undersigned knows of no practical, factual or legal reason why no market could exist for a house that is only half-built, and plaintiffs have offered no persuasive basis for so concluding.  A half-built house is nothing like a public bridge.  Thus, the *Tuscaloosa County* analogy falls flat, and the "unmarketable structure" exception to fair-market valuation principles as a measure of damages has no application here.

[5] To the extent that plaintiffs believe that they are entitled to other categories of damages (*e.g.*, travel expenses, lodging expenses, lost wages), that question has not been properly briefed.  The parties should be prepared at trial to present argument and authority supporting their respective positions regarding the availability of those remedies in a tort action for property damage under Alabama law.

[6] It is not clear what opinions and testimony plaintiffs intend to elicit from Creel at trial.  In briefing the Motion in Limine, plaintiffs appended what they dubbed "[p]ertinent portions of Mr. Creel's deposition and his expert report" to their filing.  (Doc. 79, at 4 n.4.) However, those exhibits consist of 81 pages of Creel's 106-page deposition transcript and his entire expert report.  As such, plaintiffs have failed to narrow down or identify precisely what they intend to elicit from Creel by calling him as a witness in their case-in-chief.  For purposes of this Order, the Court will assume that plaintiffs intend to call Creel to testify as to opinions he has already given in this case (*i.e.*, no new opinions) and/or to testify about conversations he had with Pro-Foam agents Mark Sealy and John Frank about their actions on the day in question.

a witness and by all appearances intends to call him during its case-in-chief, objects to this stratagem on the following grounds: (a) plaintiffs failed to disclose Creel as an expert as required by Rule 26; (b) allowing plaintiffs to call Creel would confuse the jury and unfairly prejudice the defense; and (c) plaintiffs should not be allowed to piggy-back on defendant's trial preparation.

Neither the parties' briefs nor the Court's own research reveals any *per se* rule forbidding a party from calling an adversary's expert during his case-in-chief. To the contrary, in *Peterson v. Willie*, 81 F.3d 1033 (11th Cir. 1996), the Eleventh Circuit observed that "[o]nce a witness has been designated as expected to testify at trial, there may be situations when the witness should be permitted to testify for the opposing party." *Id.* at 1037-38; *see also House v. Combined Ins. Co. of America*, 168 F.R.D. 236, 245 (N.D. Iowa 1996) ("[O]nce an expert is designated, the expert is recognized as presenting part of the common body of discoverable, and generally admissible, information and testimony available to all parties."); *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983) ("no party to litigation has anything resembling a proprietary right to any witness's evidence").[7] The *Peterson* panel opined that the decision of whether to allow a party to call as a witness the other side's expert "is committed to the sound discretion of the district court." 81 F.3d at 1038 n.4; *see also National R.R. Passenger Corp. v. Certain Temporary Easements Above Railroad Right of Way in Providence, Rhode Island*, 357 F.3d 36, 42 (1st Cir. 2004) (finding no abuse of discretion in district court's decision to allow party to call opponent's expert during party's case-in-chief and to examine him as a hostile witness).[8]

---

This assumption is rooted in plaintiffs' representation that they "seek to call Mr. Creel to elicit relevant information and to testify within the bounds of opinions he has already expressed both in his Rule 26 report and his deposition." (Plaintiffs' Brief (doc. 79), at 3.) Although defendant challenges plaintiffs' statements as being "clearly subterfuge" (Motion, at 6), it is unclear what improper motivation defendant would ascribe to plaintiffs. To the extent that plaintiffs attempt to elicit testimony or information from Creel extending beyond opinions previously given or conversations with Sealy and Frank, defendant may renew its objection at that time.

[7] *See generally* Lori J. Henkel, Annotation, *Compelling Testimony of Opponent's Expert in State Court*, 66 A.L.R. 4th 213, § 2(a) ("A substantial number of courts have expressed the view that one party may compel the testimony of an expert initially retained by the opposing litigant.").

[8] Indeed, even in the more extreme situation of "side-switching," where a party calls an adversary's former expert witness to testify against the adversary, courts have refused to

In the absence of an across-the-board prohibition, Pro-Foam proffers a series of objections to plaintiffs' attempted use of Creel in their case-in-chief. First, Pro-Foam maintains, plaintiffs should be barred from calling Creel because they never designated him as an expert witness in their Rule 26 disclosures. This contention is wholly unpersuasive. Pro-Foam has long known Creel's identity and his expert opinions in this case, as well it should, given that Pro-Foam is the party that selected, retained and first designated Creel. Pro-Foam and its attorneys have presumably been working with Creel on this case for many months, and are intimately familiar with his expertise, knowledge and opinions as they relate to the particular material issues joined herein. As this Court has explained in a previous ruling in this litigation, "The rules governing expert disclosures are intended to shield litigants from unfair surprise, not to be used by opportunistic litigants as a sword to strike down witnesses whose identities and proposed testimony have been known to them from the outset of the lawsuit." Order (doc. 74) dated July 16, 2007, at 2. The risk of unfair surprise to defendant here is exactly nil; therefore, the Court finds that defendant is once again leaning on the Rule 26 disclosure requirements to secure a tactical advantage that these rules were never intended to confer.[9]

---

deem such arrangements verboten as a matter of law. *See Industrial Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1445 (11th Cir. 1998) ("In the absence of any precedent, we decline to recognize any blanket rule or policy against 'side-switching.'"). This is not a side-switching case, but rather involves a far less combustible scenario in which one party simply wishes to call in its case-in-chief the other side's designated, testifying expert. Clearly, there is no blanket prohibition against such a maneuver, either in the Federal Rules or the binding authorities of this Circuit.

[9]   Defendant cites *Port Terminal & Warehousing v. John S. James Co.*, 695 F.2d 1328 (11th Cir. 1983), for the proposition that a party may be prejudiced by a late designation of an expert witness, even with prior notice that this expert was a possible witness, because "[k]nowing that a retained expert is a *possible* witness is of limited help to a party." *Id.* at 1335. This passage is from the lower court order, which was reproduced in full in a lengthy block quote in the appellate decision in *Port Terminal*. The Eleventh Circuit did not express approval or otherwise comment on this aspect of the lower court order; therefore, it is inaccurate to attribute this reasoning to the Eleventh Circuit. Setting that aside, *Port Terminal* is clearly distinguishable. Far from simply knowing that Creel was a possible witness, Pro-Foam knew that Creel was going to be its testifying expert at trial. Under the circumstances, it is extraordinarily difficult to imagine how defendant might have prepared for trial differently, or how it might have altered its approach to discovery, had plaintiffs designated Creel as an expert

In an attempt to overcome these considerations, defendant invokes the buzzwords of "undue prejudice" and states that plaintiffs calling Creel in these circumstances would have the effect of "confusing the jury," but never explains how or offers any specifics to justify application of those catchphrases here. If Creel has knowledge of relevant evidence that is otherwise admissible, and if defendant intends to call Creel at trial anyway, why would it be any more confusing or prejudicial for plaintiffs to elicit that evidence on direct examination rather than waiting to do so until cross-examination during defendant's case-in-chief? Either way, the result is precisely the same in terms of the evidence ultimately presented to the jury; therefore, defendant's assertion that allowing plaintiffs to call Creel will somehow confuse the jury is not compelling.[10] Nor can defendant muster prejudice from the fact that plaintiffs previously filed a successful Motion in Limine to exclude certain aspects of Creel's opinions or from the fact that plaintiffs "clearly never intended to use" him until plaintiffs' own expert was excluded by the

---

for them too prior to the applicable deadline. Simply put, *Port Terminal* does not bolster defendant's position.

[10]     To be sure, there is a potential for prejudice in "side-switching" cases if the jury learns that an expert called by one party has previously been retained by the opposing party and then changed allegiances. *See, e.g., Peterson*, 81 F.3d at 1038 ("we believe that a party should not generally be permitted to establish that the witness had been previously retained by the opposing party"); *Agron v. Trustees of Columbia University in City of New York*, 176 F.R.D. 445, 450-51 (S.D.N.Y. 1997) ("Numerous courts have acknowledged the potentially substantial prejudice stemming from testimony that reveals an expert's prior consultation with the opposing party."). "If the fact of the prior retention is revealed, jurors may assume that Plaintiff's counsel tried to suppress or hide evidence which it considered unfavorable." *Agron*, 176 F.R.D. at 451. The remedy for that concern, however, is not to forbid the expert from testifying, but is instead to restrict the parties and expert from referring to the circumstances of his retention. *See id.* at 453 (opining that "any prejudice stemming from [expert]'s prior retention by Plaintiff can be eliminated with the proper restriction on the scope of examination"); *House*, 168 F.R.D. at 248 (potential prejudice of one party calling other side's expert can be avoided or largely eliminated if lawyers and witness are forbidden from referring to how expert became involved). Defendant in this case has never articulated any such concerns, which is understandable given that this is not a side-switching case. Had it done so, however, there is no reason to believe that a similar limitation will not be effective to neutralize any legitimate concerns on this front. Plaintiffs have expressed willingness to consent to a limiting instruction, but it does not appear that one is necessary here. To the extent that Pro-Foam seeks a limiting instruction, the Court expects the parties to work together before trial to fashion mutually agreed language for what the jury will be told concerning the circumstances of Creel's testimony in plaintiffs' case-in-chief.

Court on a *Daubert* challenge. Nothing about those circumstances is prejudicial to Pro-Foam.

Next, defendant decries what it characterizes as plaintiffs' "piggy-backing" on its trial preparations by calling its expert witness. According to defendant, such a gambit is "unfair," "penalize[s] the Defendants for adhering to the scheduling order," "reward[s] Plaintiffs for not adhering to the scheduling order," and would "prejudice[]" defendant by confusing the jury. (Motion, at 5-6.) Under the circumstances, these concerns are not valid. Allowing plaintiffs to call Creel in their case-in-chief would neither reward nor penalize anyone. As stated *supra*, courts have repeatedly observed that once a party has given testimony through deposition or expert reports, those opinions do not "belong" to one party or another, but rather are available for all parties to use at trial. Defendant's argument is essentially that defendant has some proprietary, exclusive, inviolate right to Creel's testimony on which plaintiffs cannot infringe; however, decisions like *House* and *Doe* clearly state otherwise. Merely because defendant retained Creel and designated him as a testifying expert before plaintiffs did does not somehow imbue defendant with absolute, exclusive dominion to control the circumstances and manner through which his testimony reaches the jury. As noted previously, the barebones, unexplained contention that allowing plaintiffs to call Creel will somehow confuse the jury is unpersuasive.[11] Furthermore, defendant has made no meaningful showing that any prejudice will be visited upon it by this arrangement.[12] To the contrary, defendants admit that even if their Motion in Limine is

---

[11] Far from confusing a jury, it appears far more likely that allowing plaintiffs to call Creel in their case-in-chief will actually allow for a more orderly and logical presentation of evidence than would otherwise obtain. This will promote the truth-seeking function of a jury trial, rather than detracting from it.

[12] Defendant's reliance in *Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408 (D. Minn. 1999), does not warrant a contrary result. In *Ferguson*, unlike the case at bar, the defendant originally proffered the expert but then withdrew that designation, such that it no longer intended to call the expert at trial. The plaintiff, who had failed timely to designate an expert at all, then announced her intention to call that very expert on her behalf to testify at trial. Those circumstances clearly smacked of an improper attempt to circumvent the scheduling order and to piggy-back on the defendant's trial preparations. This case is vastly different. Here, Pro-Foam designated and never withdrew Creel's designation as a testifying expert at trial. It is clear that Pro-Foam intends to call Creel to testify in its case-in-chief. Thus, the issue here is not whether an expert who otherwise would not testify can be called by the opposing party (as was the situation in *Ferguson*), but is rather at what point in the trial Creel's previously stated

successful, plaintiffs will be able to elicit the same testimony from Creel on cross-examination in defendant's case-in-chief that they seek to elicit on direct examination in their own case-in-chief. (Motion, at 6.)  Under the circumstances, defendant's claim of "extreme prejudice" if plaintiffs are allowed to call Creel as a witness cannot withstand scrutiny.

**IV.     Conclusion.**

For all of the foregoing reasons, Defendant's Motion in Limine to Restrict Plaintiffs to their Deposition Testimony Concerning the Alleged Pre-Fire and Alleged Post-Fire Value of the Subject Property (doc. 77) and Defendant's Motion in Limine to Prevent Plaintiffs from Calling Defense Expert Larry Creel to Testify (doc. 78) are both **denied**.

DONE and ORDERED this 7th day of August, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

opinions will be elicited by plaintiffs' counsel.  In these circumstances, the concerns of unfairness and prejudice that animated *Ferguson* are inapposite.  Even if they were otherwise germane to this case, the *Ferguson* considerations are mere dicta by a district court in another jurisdiction, and are therefore of limited persuasive authority.